**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

HARBOURVIEW PRODUCTS INTERNATIONAL, LLC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.; AND UPS SUPPLY CHAIN SOLUTIONS, TOGETHER, "UPS"; THE UNITED STATES OF AMERICA, AND THE UNITED STATES CUSTOMS AND BORDER PROTECTION,

Defendants.

Court No. 1:26-cv-01471

**DEFENDANT UPS'S MOTION TO DISMISS**

Under Rule 12(b)(1) of the Rules of the Court of International Trade, United Parcel Service, Inc. and UPS Supply Chain Solutions (together "UPS") move for an order dismissing Plaintiff's Class Action Complaint without prejudice. For the reasons set forth in the accompanying Memorandum of Law, the Court should grant this Motion and award such other and further relief as it deems just and proper.

Respectfully submitted this 17th day of November 2026.

*<u>/s/ Jeffrey M. Telep</u>*
Jeffrey M. Telep
J. Michael Taylor
Ashley C. Parrish
Patrick J. Togni
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 737-0500
JTelep@kslaw.com

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre *[Admission to the Bar of the U.S. Court of International Trade pending]*
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
zmcentyre@kslaw.com

Attorneys for UPS

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

HARBOURVIEW PRODUCTS INTERNATIONAL, LLC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.; AND UPS SUPPLY CHAIN SOLUTIONS, TOGETHER, “UPS”; THE UNITED STATES OF AMERICA, AND THE UNITED STATES CUSTOMS AND BORDER PROTECTION,

Defendants.

Court No. 1:26-cv-01471

**ORDER**

On consideration of UPS’s motion to dismiss, plaintiff’s response, and all other relevant papers, it is hereby:

ORDERED that UPS’s motion is granted;

ORDERED that the complaint is dismissed without prejudice.

IT IS SO ORDERED.

Dated: ___________

_______________________________
Richard K. Eaton
Senior Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| HARBOURVIEW PRODUCTS INTERNATIONAL, LLC, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>UNITED PARCEL SERVICE, INC.; AND UPS SUPPLY CHAIN SOLUTIONS, TOGETHER, "UPS"; THE UNITED STATES OF AMERICA, AND THE UNITED STATES CUSTOMS AND BORDER PROTECTION,<br>Defendants. | Court No. 1:26-cv-01471 |

**DEFENDANT UPS'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

ARGUMENT ........................................ 6

I. The Court should dismiss the complaint for lack of jurisdiction. ........................................ 6

A. This Court has no authority to adjudicate claims against private parties, like UPS. ........................................ 7

B. To the extent that UPS was the importer of record that paid the relevant tariffs, Harbourview has no standing to bring its claims against the government ........................................ 9

II. Harbourview's claims against UPS are not ripe for adjudication ........................................ 11

CONCLUSION ........................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Freestyle World, Inc. v. U.S. Customs and Border Prot.*,
2026 WL 3027676 (Ct. Int'l Trade Oct. 8, 2026) ........................................................1, 4, 10

*Learning Res., Inc. v. Trump,*
607 U.S. 229 (2026) ..........................................................................................................1, 4, 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................................9

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ................................................................................................................12

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803 (2003) ................................................................................................................11

*Nucor Fastener Div. v. United States*,
751 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) ..........................................................................11

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
523 U.S. 726 (1998) ................................................................................................................12

*Oregon v. United States*,
835 F. Supp. 3d 1307 (Ct. Int'l Trade 2026) ......................................................................9, 10

*Playhouse Import & Export, Inc. v. United States*,
843 F. Supp. 716 (Ct. Int'l Trade 1994) ..............................................................................10, 11

*Powers v. Ohio*,
499 U.S. 400 (1991) ................................................................................................................10

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041 (Fed. Cir. 2012) ..........................................................................................3, 7, 8

*South African Marine Corp., Ltd. v. United States*,
640 F. Supp. 247 (Ct. Int'l Trade 1986) ..............................................................................9, 10

*Texas v. United States*,
523 U.S. 296 (1998) ............................................................................................................11, 12

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) ................................................................................................................11

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
529 F.3d 1352 (Fed. Cir. 2008)....11

*Totes-Isotoner Corp. v. United States*,
569 F. Supp. 2d 1315 (Ct. Int'l Trade 2008) ....9

*Totes-Isotoner Corp. v. United States*,
594 F.3d 1346 (Fed. Cir. 2010)....9

*United Parcel Service v. United States*,
No. 1:26-cv-05050 (Ct. Int'l Trade Nov. 6, 2026)....2, 6, 10, 13

*United States v. Clintwood Elkhorn Min. Co.*,
553 U.S. 1 (2008)....8

*V.O.S. Selections, Inc. v. Trump*,
149 F.4th 1312 (Fed. Cir. 2025) ....7

*V.O.S. Selections, Inc. v. United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ....4

*Vivitar Corp. v. United States*,
585 F. Supp. 1419 (Ct. Int'l Trade 1984) ....8

*Warth v. Seldin*,
422 U.S. 490 (1975)....9

**Constitutional Provisions**

U.S. Const. art. III, § 1 ....7

**Statutes**

19 U.S.C. § 1484(a)(1)....3

19 U.S.C. § 1484(a)(2)(B) ....3, 4

19 U.S.C. § 1516a (Tariff Act of 1930 § 516A)....11

19 U.S.C. § 1641....4

28 U.S.C. §§ 1581–84....3, 6, 7

28 U.S.C. § 1581(i)....7

28 U.S.C. § 2201....2

28 U.S.C. § 2631....10, 11

International Emergency Economic Powers Act .................................................................. *passim*

**Other Authorities**

United Parcel Serv., IEEPA Tariff Refund Process, https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds (last visited Nov. 13, 2026) ..................................................................2, 5, 12, 13

*United Parcel Service Inc: Q1-2026 Earnings Call*, Alpha Spread, https://www.alphaspread.com/security/nyse/ups/earnings-calls/q1-2026 ................................5

**INTRODUCTION**

The complaint should be dismissed because: (1) the Court lacks jurisdiction over the claims against defendant United Parcel Service, Inc. and UPS Supply Chain Solutions (together "UPS"); (2) plaintiff Harbourview Products International, LLC ("Harbourview") lacks standing to sue the government for entries made by UPS; and (3) Harbourview's claims are premature and not ripe for adjudication. UPS appreciates Harbourview's desire to be reimbursed for amounts allegedly paid to cover tariffs that UPS remitted to the government. But this Court is overseeing an orderly process for the refund of tariffs paid to the government by importers of record, UPS is actively seeking refunds as part of that process, and UPS has already committed to reimburse its customers on a rolling basis as refunds are received. This litigation is improper and unnecessary.

The Supreme Court held in *Learning Resources*, *Inc. v. Trump* that the International Emergency Economic Powers Act ("IEEPA") does not provide the Executive Branch with authority to impose across-the-board tariffs. 607 U.S. 229, 255 (2026). In the wake of that litigation, this Court is overseeing a careful process for the government to provide refunds, and it recently certified a class of "[a]ll importers of record who paid" IEEPA tariffs. *Freestyle World, Inc. v. U.S. Customs and Border Prot.*, 2026 WL 3027676, *16 (Ct. Int'l Trade Oct. 8, 2026). The private, non-government defendant named in this action—UPS—is a member of that class, and through that litigation seeks "an injunction directing . . . reliquidation of any IEEPA duties payments that have already been liquidated." *Id.* at *1 (citation modified). In addition to that litigation, and as currently required by the government, UPS has filed an individual lawsuit against the government to preserve its rights and seek damages for IEEPA tariffs that were improperly collected on liquidated entries for which the government is not providing refunds without an order

from this Court. *United Parcel Service v. United States*, No. 1:26-cv-05050 (Ct. Int'l Trade Nov. 6, 2026).

UPS has made a clear commitment to its customers. After UPS receives any refunds from the government, it will remit the funds received—duty refunds, plus interest—to customers who were charged for tariffs when purchasing services for which UPS acted as the importer of record. In furtherance of that commitment, UPS has developed at its own expense a transparent process to make payments to its customers on a rolling basis as it receives entry-specific refunds and interest from the government. That payment process is described in more detail on the UPS website. *See* United Parcel Serv., IEEPA Tariff Refund Process, https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds (last visited Nov. 13, 2026) ("UPS Tariff Site").[1]

Despite these commitments and this Court's efforts to establish an orderly refund process, Harbourview filed this putative class action against both the government and UPS. Harbourview and its putative class are not importers of record for the relevant transactions entered by UPS. Nonetheless, Harbourview's lawsuit seeks declaratory relief under 28 U.S.C. § 2201 and the establishment of a constructive trust for any funds that members of the putative class allegedly paid to UPS as a result of the IEEPA tariffs. Compl., Dkt. 2 ¶¶ 82–92, 98–103.

---

[1] The FAQ, "*Where is my refund?*" on the UPS Tariff Site explains:

> We're committed to issuing IEEPA <u>tariff refunds, and any applicable interest</u>, to the payors as quickly as possible. Our dedicated team is processing millions of entries and working through the required accounting review, validation and reconciliation steps to help ensure your refund is accurate and secure.
>
> We know these refunds are important to our customers and appreciate your patience throughout this complex process.
>
> Please note that UPS has not received refunds for all shipments eligible for IEEPA tariff refunds. The U.S. treasury is still sending Phase One refunds on a rolling basis. UPS cannot issue refunds until we receive the funds from CBP and complete our review, validation and reconciliation processes.

(emphasis added).

The litigation should be dismissed because this Court lacks jurisdiction over this dispute. UPS is a private party, and any remedy that Harbourview seeks against UPS would require a determination of Harbourview's private contractual rights vis-à-vis UPS, a dispute that falls outside this Court's specialized and limited jurisdiction. *See* 28 U.S.C. §§ 1581–84; *see also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1051 (Fed. Cir. 2012). Moreover, Harbourview does not have standing to bring claims against the government because it is not an importer of record with respect to any relevant entries, and it is therefore not entitled to seek tariff refunds with respect to those entries. Finally, and relatedly, allowing this action to proceed would violate basic doctrines of ripeness. UPS's customers should not be allowed to seek reimbursement from UPS until refunds are first paid by the government to UPS through the process this Court is already overseeing. It would only complicate this litigation, burden this Court, and cause unnecessary prejudice to force UPS to litigate a premature dispute over money it has agreed to return to its customers as soon as it receives appropriate refunds from the government.

**BACKGROUND**

Throughout most of 2025, the government collected tariffs under IEEPA (and related statutes) on goods imported into the United States. Compl. ¶¶ 30–50. During that period, as required, UPS collected funds from Harbourview and other members of the putative class related to its services "for goods imported to the United States from countries for which . . . IEEPA tariffs were imposed." *Id.* ¶ 24. UPS acted at times as an importer of record for its customer consignees under its authority as a licensed customs broker. *See* 19 U.S.C. § 1484(a)(1) (providing that only parties qualified under subsection 2(B) as an "importer of record" may make entry); § 1484(a)(2)(B) (providing the list of qualified importers of record include a customs broker

"holding a valid license under [19 U.S.C. §] 1641").[2] As the importer of record who is "responsible for customs compliance," UPS remitted those tariffs to the government. Compl. ¶¶ 20–24.

The government's IEEPA tariffs were challenged in litigation, including in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). This Court declared the IEEPA tariffs "invalid as contrary to law" and enjoined their collection. *Id.* at 1384. That decision was affirmed by the Federal Circuit and, ultimately, by the Supreme Court. *See Learning Res.*, 607 U.S. at 252. But neither court addressed how the government "should go about returning the billions of dollars" that it had "collected from importers," *id.* at 390 (Kavanaugh, J., dissenting), leaving this Court to address that issue in the first instance.

Following the Supreme Court's *Learning Resources* decision, this Court has ordered Customs and Border Protection ("CBP") to: (1) "liquidate" "all unliquidated entries that were entered subject to" IEEPA tariffs; and (2) "reliquidate without regard to" those tariffs both "[a]ny liquidated entries for which liquidation is not final" and "[a]ny liquidated entries for which liquidation is final." Ex. 1, *V.O.S. Selections* Refund Order, at 3. In response, CBP created the Consolidated Administration and Processing of Entries ("CAPE") process to administer refunds sought by the importer of record or the licensed customs broker that filed the applicable entries upon which IEEPA tariffs were paid. Ex. 2, *Freestyle World* B. Lord Decl., ¶ 2. Under this

[2] 19 U.S.C. § 1484(a)(2)(B) provides:

> When an entry of merchandise is made under this section, the required documentation or information shall be filed or electronically transmitted either by the owner or purchaser of the merchandise or, <u>when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title</u>. When a consignee declares on entry that he is the owner or purchaser of merchandise the Customs Service may, without liability, accept the declaration. For the purposes of this chapter, the importer of record must be one of the parties who is eligible to file the documentation or information required by this section.

(emphasis added).

process, CBP has allowed certain refunds of IEEPA tariffs in three phases. Ex. 3, *V.O.S. Selections* S. Thomas Decl., ¶¶ 7–8. But CBP asserts that it will not refund IEEPA tariffs imposed on goods that are more than 90 days beyond liquidation absent a court order obtained through individual litigation brought by the importer that paid the tariffs. Ex. 4, *V.O.S. Selections* Class Cert. Opp. 7–8.

To the extent that Harbourview is an importer of record, Harbourview has already secured an Order from this Court providing it with the ability to file for refund claims in Phase 3 of CAPE. *See* Dkt. 26. Nothing suggests that Harbourview is now deprived of access to obtain refunds of IEEPA tariffs on entries for which Harbourview qualified as the importer of record. In this litigation, however, Harbourview is expressly seeking refunds not for IEEPA tariffs that it paid on entries as an importer of record, but for IEEPA tariffs that UPS paid as importer of record on behalf of its customers. *See, e.g.*, Compl. ¶¶ 1, 8, 85–86.

UPS has sought to work with CBP in good faith to receive reimbursement for the "over $5 billion" it paid in IEEPA tariffs. *See United Parcel Service Inc: Q1-2026 Earnings Call*, Alpha Spread, https://www.alphaspread.com/security/nyse/ups/earnings-calls/q1-2026 (last visited Nov. 17, 2026) ("Q1 2026 Earnings Call"). UPS has also already committed that "as soon as we get that [reimbursement], we're going to remit it right back to our customer." Q1 2026 Earnings Call. Recognizing that "it's going to take some time before the [T]reasury remits [IEEPA tariff refund] money to" the company, UPS has created—at company expense—a dedicated refund portal through which individual customers can identify eligible shipments and request reimbursement to be paid when the government provides tariff refunds. *See* UPS Tariff Site. UPS has committed to "request and retrieve IEEPA tariff refunds from CBP on [its] customers' behalf" and has been doing so at its own cost. *See* UPS Tariff Site.

UPS cannot pay the money to its customers until UPS receives the refunds from the government. As the website explains, because "UPS has not received refunds for all [eligible] shipments," and because the "[T]reasury is still sending [refunds] on a rolling basis," the company "cannot issue [all] refunds until [it] receive[s] the funds from CBP and complete[s] [its] review, validation[,] and reconciliation processes." *Id.* Moreover, because of positions CBP has taken in litigation, UPS cannot know the amount of refunds that will be provided by the government or when those payments will occur. *See, e.g.*, Ex. 4, *V.O.S. Selections* Class Cert. Opp. 7–8 (arguing that the "amount of refund" to which importers are entitled can only be determined through the vagaries of litigation). UPS has also taken the additional step of filing its own lawsuit to ensure that any finally liquidated entries are refunded to its customers. *See United Parcel Service*, No. 1:26-cv-05050.

Nonetheless, Harbourview has filed this case against UPS and the United States on behalf of a putative nationwide class. The putative class would include "[a]ll individuals or entities who have paid or will pay IEEPA tariffs to UPS after April 2, 2025" in connection with products imported into the United States. Compl. ¶ 71. Harbourview seeks a declaratory judgment that UPS must refund IEEPA tariffs paid by the putative class, an injunction requiring CBP to refund IEEPA duties to UPS, and a constructive trust over tariff refunds UPS receives for distribution to the class. *Id.* ¶¶ 92, 95, 99.

## ARGUMENT

### I. The Court should dismiss the complaint for lack of jurisdiction.

Owing to the unique sovereign interests in the collection of taxes and the regulation of trade, Congress granted this Court exclusive—and limited—jurisdiction over claims arising out of tariffs that are brought against the United States (or brought by the United States against others). 28 U.S.C. §§ 1581–84. This Court lacks jurisdiction over claims brought by private parties, like

Harbourview, against private parties, like UPS. Moreover, with respect to the entries in which UPS was the importer of record, because Harbourview did not make any tariff payments directly to the government and is not an importer of record, it cannot pursue claims against the government.

### A. This Court has no authority to adjudicate claims against private parties, like UPS.

This Court is a court of limited or "narrow" jurisdiction. *Sioux Honey*, 672 F.3d at 1051. "Article III of the Constitution provides that '[t]he judicial Power of the United States shall be vested . . . in such inferior Courts as the Congress may from time to time ordain and establish.'" *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1328 (Fed. Cir. 2025) (quoting U.S. Const. art. III, § 1). Because this Court was "created by statute," it "cannot exercise jurisdiction over actions" that are "not addressed by a specific jurisdictional grant." *Sioux Honey*, 672 F.3d at 1051 (citation modified).

Harbourview asserts jurisdiction under 28 U.S.C. § 1581(i). But nothing in that "specific jurisdictional grant" confers authority to adjudicate Harbourview's claims against UPS or any other non-government party. *Sioux Honey*, 672 F.3d at 1050–51 (holding that the Court of International Trade lacks jurisdiction "over claims asserted by private parties against other private parties."). Congress has granted this Court only specific and limited jurisdiction to resolve disputes involving the United States. *Id.* This Court's jurisdiction is defined in 28 U.S.C. §§ 1581–84, which confers "exclusive jurisdiction" over "[c]ivil actions *against the United States* and [its] agencies and officers" arising out of tariff or trade disputes. *Id.* § 1581 (emphasis added). The statute likewise grants this Court "exclusive jurisdiction" over "[c]ivil actions commenced *by the United States*" arising out of such disputes, along with jurisdiction over "[c]ivil actions brought by the United States under the United States-Canada Free-Trade Agreement or the USMCA." *Id.* §§ 1582, 1584 (emphasis added).

This limited jurisdictional grant reflects the unique sovereign interests at stake when the government exercises its taxing power, including its power to impose tariffs in connection with foreign trade. *See Learning Res.*, 607 U.S. at 240–41 ("The power to impose tariffs is very clearly a branch of the taxing power.") (citation modified). In recognition that the power to tax is different from the government's other enumerated powers, Congress has created specific remedies and limited fora for adjudicating disputes that arise from an exercise of the government's taxing powers. *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11–12 (2008) (describing Congress's elaborate scheme governing tax disputes). Consistent with the unique sovereign interests that apply in that context, Congress has assigned this Court specific responsibility for overseeing disputes involving the trade laws and the government's imposition of tariffs and other Customs duties. *See Vivitar Corp. v. United States*, 585 F. Supp. 1419, 1423 (Ct. Int'l Trade 1984). As this Court has long recognized, its "basic purpose is to provide a comprehensive system of judicial review of civil actions arising from import transactions, utilizing" its "specialized expertise" to ensure "uniformity in the judicial decision-making process." *Id.* (citation modified).

Harbourview's claims against UPS do not implicate the unique sovereign interests that underpin the Court's "specific jurisdictional grant." *Sioux Honey*, 672 F.3d at 1050–51. Its claims against UPS are based on (unripe) allegations that UPS has violated a private contractual duty to return payments provided to UPS that UPS then remitted to the government. Those claims are not properly before the Court because the scope of UPS's private contractual duties to Harbourview does not constitute a claim against the government and, therefore, is not within the scope of this Court's grant of jurisdictional authority. Because this Court lacks jurisdiction to consider them, Harbourview's claims against UPS should be dismissed. *Id.*

**B. To the extent that UPS was the importer of record that paid the relevant tariffs, Harbourview has no standing to bring its claims against the government.**

To invoke the proper jurisdiction of this Court, Harbourview must establish standing to bring its claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The "threshold question in every federal case . . . is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to . . . justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (citation modified). Harbourview cannot meet that burden for entries made by UPS, because Harbourview is not the importer of record for those entries, did not itself pay any tariffs to the government, and, as a result, is not entitled to any remedy against the government. *See Oregon v. United States*, 835 F. Supp. 3d 1307, 1327 (Ct. Int'l Trade 2026) (finding that plaintiffs had no standing when they had not "been . . . required to pay duties" (citation modified)); *see also* Compl. ¶ 20 (identifying UPS, not Harbourview, as the party that remitted the tariffs to the government).

When—as here—a plaintiff seeks restitution for, or return of, impermissibly levied tariffs or duties, the standing inquiry hinges in part on whether the plaintiff directly paid the tariff. *Oregon*, 835 F. Supp. 3d at 1327; *Totes-Isotoner Corp. v. United States*, 569 F. Supp. 2d 1315, 1323–24 (Ct. Int'l Trade 2008) (relying on the fact that a plaintiff had "paid the allegedly [impermissible] tariff rates" directly to the government to support standing); *see also Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010) (holding that, while "[i]mporters suffer an injury in fact as they are legally required to pay the [challenged] tariff . . . purchasers have no remedy to challenge [a] tariff classification"). Under analogous but distinct circumstances, this Court has therefore rejected attempts by a party who did not directly pay the duty to recover funds from the government. *South African Marine Corp., Ltd. v. United States*, 640 F. Supp. 247, 250–52, 255 (Ct. Int'l Trade 1986) (dismissing, on statutory standing

grounds, a complaint seeking a return of "import fees" when the plaintiff "did not pay anything directly to Customs").

In instances where UPS served as the importer of record, Harbourview never paid the alleged illegal tariffs directly to the government. Compl. ¶ 20. Instead, they were paid by UPS. *Id.* As a result, Harbourview's requested declaratory and injunctive relief, the result of which would be the return of the tariff money to Harbourview and the putative class, cannot remedy the alleged wrong. For entries made by UPS, the government has received no money from Harbourview to return; instead, the government has received funds only from UPS, leaving UPS as the appropriate party with standing to sue the government for a refund with respect to those entries. It is exactly that kind of litigation that UPS has commenced, in addition to being a putative class member in the ongoing *Freestyle World* class action. *See United Parcel Service*, No. 1:26-cv-05050; *cf. Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (discussing limited circumstances when litigation can be pursued on behalf of third parties who face "some hindrance" to seeking relief).

Because Harbourview never paid the tariffs directly to the government, it can assert only an attenuated "case of indirect injury" in its claims against the government. *Oregon*, 835 F. Supp. 3d at 1326 n.18. In such a case, "causation and redressability are typically more difficult to establish." *Id.* Here, Harbourview cannot establish that its requested relief would satisfy even ordinary redressability requirements, much less the heightened standards that apply to a case involving an "indirect injury." *See id.*

Congress has also delineated specific parties entitled to "commence a civil action" before this Court. 28 U.S.C. § 2631. Section 2631 "addresses the standing requirements for parties to commence an action, provided that the court already possesses jurisdiction to hear such an action."

*Playhouse Import & Export, Inc. v. United States*, 843 F. Supp. 716, 721 (Ct. Int'l Trade 1994). Harbourview asserts that it has standing under section 2631(c) and (i). But neither statutory subsection applies to Harbourview or its claims. Section 2631(c), for example, permits a party to commence an action before this Court to "contest[] a determination listed in section 516A of the Tariff Act of 1930." Section 516A, in turn, deals with judicial review of determinations in specific "countervailing duty and antidumping duty proceedings." 19 U.S.C. § 1516a. And section 2631(i) extends only to parties aggrieved by "agency action" within the meaning of the APA. Neither of these provisions authorizes a party, like Harbourview, to bring a claim against the government to recover tariffs it did not pay in the context of an unripe dispute over an alleged contractual right for reimbursement after the government provides refunds to the importer of record. On the contrary, interpreting the statute to permit this type of litigation would open the door to a dramatic expansion in the parties that are entitled to bring suit against the government in this Court.

**II. Harbourview's claims against UPS are not ripe for adjudication.**

The Court should dismiss this complaint for the additional reason that Harbourview's claims are not ripe. "Ripeness is a 'justiciability doctrine' that 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nucor Fastener Div. v. United States*, 751 F. Supp. 2d 1327, 1333 (Ct. Int'l Trade 2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003)). In evaluating ripeness, courts consider "(1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (citation modified). A claim is not ripe "if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

This case is not ripe because any question concerning UPS's alleged contractual obligation to pay customers for tariffs that have not yet been refunded by the government is not an issue fit for judicial decision. Before any court could grant declaratory relief or create a constructive trust, CBP must refund UPS for all the tariffs impermissibly collected. As explained above, the government has not yet agreed to refund all the IEEPA tariffs it collected, and there is ongoing litigation regarding whether the government will have to issue such a refund. Significant uncertainty surrounds whether (and, if so, when) CBP will refund to UPS all of the IEEPA tariffs it remitted to the government. *See Texas*, 523 U.S. at 300; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892 n.3 (1990) (noting a matter is not "ripe for challenge" when injury is contingent upon "separate and independent decisionmaking" yet to occur).

Moreover, Harbourview will suffer no hardship from waiting for the tariff refund process overseen by this Court to run its course. UPS has committed to returning to its customers all refunds and interest it receives from the government for the IEEPA tariffs that Harbourview and members of the putative class have paid to UPS. *See* UPS Tariff Site. No one, including Harbourview, has alleged that UPS is failing to honor that commitment. But, even if they were, Harbourview would "have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998).

In contrast, substantial hardship would be imposed on UPS if this Court were to allow Harbourview's claims to proceed. UPS would be forced to litigate this dispute—over an unknown amount of money, to be received at an unknown time, through an unclear process—in parallel to its ongoing litigation against the government. In addition to sowing confusion, allowing this premature litigation would impose significant costs on UPS at a time when it has already gone to

great expense to set up its own internal process for reimbursing any tariff monies it receives and taken all procedural steps necessary to ensure that its customers obtain refunds. *See* UPS Tariff Site; *United Parcel Service*, No. 1:26-cv-05050.

## CONCLUSION

For these reasons, the Court should dismiss Harbourview's complaint.

Respectfully submitted,

*/s/ Jeffrey M. Telep*
Jeffrey M. Telep
J. Michael Taylor
Ashley C. Parrish
Patrick J. Togni
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 737-0500
JTelep@kslaw.com

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre *[Admission to the Bar of the U.S. Court of International Trade pending]*
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
zmcentyre@kslaw.com

Dated: November 17, 2026

Attorneys for UPS

**Certificate of Compliance**

I hereby certify, pursuant to section 2(b)(1) of the Standard Chambers Procedures of this Court, that this brief contains 4,039 words, excluding the table of contents, table of authorities, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

*/s/ Jeffrey M. Telep*
Jeffrey M. Telep
J. Michael Taylor
Ashley C. Parrish
Patrick J. Togni
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 737-0500
JTelep@kslaw.com

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre *[Admission to the Bar of the U.S. Court of International Trade pending]*
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
zmcentyre@kslaw.com

Dated: November 17, 2026

Attorneys for UPS