IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| HARBOURVIEW PRODUCTS INTERNATIONAL, LLC,<br><br>Plaintiff, individually and on behalf of all others similarly situated,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC. (“UPS”); AND UPS SUPPLY CHAIN SOLUTION, TOGETHER, “UPS ENTITIES”; THE UNITED STATES OF AMERICA, AND THE UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Court No. 26-01471 |

**ORDER**

On consideration of defendants’ motion to dismiss for lack of jurisdiction, it is hereby

ORDERED that defendants’ motion to dismiss is GRANTED; and it is further

ORDERED that the action is DISMISSED.

**SO ORDERED.**

Dated: ___________________, 2026
New York, NY

_______________________________
Senior Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| MSR IMPORTS, INC.,<br><br>Plaintiff and proposed Class Representative,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, and the UNITED STATES OF AMERICA,<br><br>Defendants,<br><br>and<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Court No. 26-02645 |

**ORDER**

On consideration of defendants' motion to dismiss for lack of jurisdiction, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED; and it is further

ORDERED that the action is DISMISSED.

**SO ORDERED.**

Dated: ____________________, 2026
New York, NY

________________________________
Senior Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| HARBOURVIEW PRODUCTS INTERNATIONAL, LLC,<br><br>Plaintiff, individually and on behalf of all others similarly situated,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC. ("UPS"); AND UPS SUPPLY CHAIN SOLUTION, TOGETHER, "UPS ENTITIES"; THE UNITED STATES OF AMERICA, AND THE UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Court No. 26-01471 |
| MSR IMPORTS, INC.,<br><br>Plaintiff and proposed Class Representative,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, and the UNITED STATES OF AMERICA,<br><br>Defendants,<br><br>and<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Court No. 26-02645 |

**DEFENDANTS' MOTION TO DISMISS**

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BLAKE W. COWMAN
REBECCA T. MITCHELL
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
(202) 353-2494
Blake.W.Cowman@usdoj.gov
Rebecca.Mitchell@usdoj.gov

November 17, 2026

*Attorneys for Defendants*

# TABLE OF CONTENTS

BACKGROUND ... 1
SUMMARY OF THE ARGUMENT ... 2
ARGUMENT ... 3
I. Standard of Review ... 3
II. This Court Should Dismiss Any Claim Against the Government as Moot ... 5
III. This Court Should Dismiss Plaintiffs' Complaints for Lack of Standing ... 9
A. Plaintiffs Lack Standing for their Claims Under 28 U.S.C. § 1581(i) ... 9
1. Article III Standing ... 10
2. Prudential Standing ... 15
B. MSR Cannot Establish Standing Through Its Allegations of "Agency" ... 17
1. Statutory and Regulatory Background ... 17
i. Imports Through the International Postal Network ... 17
ii. Express Consignment Operators ... 19
2. FedEx and UPS are Express Consignment Operators, Not Government Agents ... 20
IV. Plaintiffs' Remaining Jurisdictional Arguments Are Unavailing Because They Have Not Identified Any Statute Establishing that this Court Possesses Jurisdiction Over Their Claims ... 23
CONCLUSION ... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Bankers Ass'n v. United States*,
932 F.3d 1375 (Fed. Cir. 2019) ............ 5

*Andritz Sundwig GMBH v. United States*,
322 F. Supp. 3d 1360 (Ct. Int'l Trade 2018) ............ 23

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)............ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............ 4

*Axle of Dearborn, Inc. v. Dep't of Com.*,
No. 25-00091, 2026 WL 2350891 (Ct. Int'l Trade Aug. 13, 2026) (per curiam)............ 18

*Barnes v. United States*,
797 F. Supp. 3d 1379 (Ct. Int'l Trade 2025) ............ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............ 4

*Bennett v. Spear*,
520 U.S. 154 (1997)............ 15

*Canadian Lumber Trade All. v. United States*,
517 F.3d 1319 (Fed. Cir. 2008)............ 13

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993)............ 4

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)............ 9

*Engage Learning, Inc. v. Salazar*,
660 F.3d 1346 (Fed. Cir. 2011)............ 4

*Federal Express Corp. v. United States*,
No. 26-01150 (Ct. Int'l Trade)............ 6, 16

*Finkelman v. NFL*,
810 F.3d 187 (3d Cir. 2016)............ 10

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)............ 10, 13, 14

*Freestyle World Inc. v. United States*,
Court No. 26-01088 (Ct. Int'l Trade) ... 22

*Freestyle World, Inc. v. U.S. Customs & Border Prot.*,
No. 26-01088, 2026 WL 3027676 (Ct. Int'l Trade Oct. 8, 2026) ... 2

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ... 10, 14

*Giorgio Foods, Inc. v. United States*,
515 F. Supp. 2d 1313 (Ct. Int'l Trade 2007) ... 23

*Grp. Italglass U.S.A., Inc. v. Untied States*,
839 F. Supp. 868 (Ct. Int'l Trade 1993) ... 20

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ... 4

*In re FedEx Tariff Litigation*,
No. 2:26-cv-02181 (W.D. Tenn. June 1, 2026) ... 7, 14

*In re UPS Tariff Litigation*,
No. 1:26-cv-2097 (N.D. Ga. April 14, 2026) ... 7

*Incyte Corp. v. Sun Pharm. Indus., Inc.*,
136 F.4th 1096 (Fed. Cir. 2025) ... 10

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) ... 1

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ... 10

*Mitchco Int'l, Inc. v. United States*,
26 F.4th 1373 (Fed. Cir. 2022) ... 5

*Murphy v. Hunt*,
455 U.S. 478 (1982) ... 5

*Murthy v. Missouri*,
603 U.S. 43 (2024) ... 11, 13

*N. Am. Interpipe, Inc. v. United States*,
519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) ... 15

*Oregon v. United States*,
835 F. Supp. 3d 1307 (Ct. Int'l Trade 2026) ... 11

*Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*,
823 F. Supp. 2d 1365 (Ct. Int'l Trade 2012) ........ 24

*Powell v. McCormack*, 395 U.S. 486 (1969) ........ 5, 6

*PrimeSource Bldg. Prods. v. United States*,
494 F. Supp. 3d 1307 (Ct. Int'l Trade 2021) (Baker, J., concurring) ........ 15

*Rack Room Shoes v. United States*,
718 F.3d 1370 (Fed. Cir. 2013) ........ 14

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) ........ 4

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ........ 10

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041 (Fed. Cir. 2012) ........ 9, 24

*SKF USA, Inc. v. United States*,
512 F.3d 1326 (Fed. Cir. 2008) (per curiam) ........ 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4

*Sw. Airlines Co. v. United States*,
777 F. Supp. 3d 1318 (Ct. Int'l Trade 2025) ........ 16

*Thyssenkrupp Mexinox S.A. de C.V. v. United States*,
616 F. Supp. 2d 1376 (Ct. Int'l Trade 2009) ........ 24

*Totes-Isotoner Corp. v. United States*,
594 F.3d 1346 (Fed. Cir. 2010) ........ 10, 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 14

*Trayco, Inc. v. United States*,
994 F.2d 832 (Fed. Cir. 1993) ........ 9

*United Parcel Service Co v. United States*,
Court No. 26-05050 (Ct. Int'l Trade) ........ 6, 16

*United States v. Abbouchi*,
502 F.3d 850 (9th Cir. 2007) ........ 21

*United States v. Fed. Ins. Co.*,
805 F.2d 1012 (Fed. Cir. 1986) ........ 23

*United States v. UPS Customhouse Brokerage, Inc.*,
558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008) ........ 21

*V.O.S. Selections, Inc. v. United States*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ........ 13

*VoestAlpine USA Corp. v. United States*,
578 F. Supp. 3d 1263 (Ct. Int'l Trade 2022) ........ 5

*Wanxiang Am. Corp. v. United States*,
12 F.4th 1369 (Fed. Cir. 2021) ........ 5

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 4, 9

*Wopsock v. Natchees*,
454 F.3d 1327 (Fed. Cir. 2006) ........ 8

*XYZ Corp. v. United States*,
253 F. Supp. 3d 1257 (Ct. Int'l Trade 2017) ........ 8

**Statutes**

5 U.S.C. § 702 ........ 8

5 U.S.C. § 706 ........ 8

19 U.S.C. § 1321(a)(2)(C) ........ 17

19 U.S.C. § 1505(a) ........ 12

19 U.S.C. § 1505(a)-(b) ........ 6

19 U.S.C. § 1505(b) ........ 12

28 U.S.C. § 1331 ........ 23

28 U.S.C. § 1332(d)(2) ........ 23

28 U.S.C. § 1581(i) ........ 7, 8, 9, 23

28 U.S.C. § 1583 ........ 24

28 U.S.C. § 2631(i) ........ 8

28 U.S.C. § 2640(e) ........ 8

39 U.S.C. § 407 ........ 21

**Rules**

USCIT R. 12(b)(1) ........ 1, 3

USCIT R. 12(b)(6) ........ 1, 4

USCIT R. 12(h)(3) ........ 4

**Regulations**

19 C.F.R. §§ 10.151, 10.153 (2025) ........ 17

19 C.F.R. § 24.36(b) ........ 2, 6, 12, 16

19 C.F.R. § 101.1 ........ 18

19 C.F.R. § 128.1(a) ........ 19, 21

19 C.F.R. § 128.23(b)(1) ........ 20

19 C.F.R. §§ 128.3-128.5 ........ 21

19 C.F.R. § 128.24 ........ 20

19 C.F.R. § 128.25 ........ 20

19 C.F.R. § 141.1(b)(1) ........ 12, 15

19 C.F.R. § 143.26(b) ........ 18

19 C.F.R. § 145.0(a) ........ 17

19 C.F.R. §§ 145.31, 145.1(a)-2(b) (2025) ........ 18

**Other Authorities**

Executive Order 14324 ........ 18, 19, 20, 21

FedEx, Annual Report (Form 10-K) at 42 (May 31, 2026), https://www.sec.gov/Archives/edgar/data/1048911/000104891126000105/fdx-20260531.htm ........ 6

*IEEPA Tariff Refund Process*, UPS, https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds (last visited Nov. 17, 2026) ........ 7

*Indefinite Suspension of the De Minimis Exemption for Mail Shipments and New Postal Informal Entry Process*, 91 Fed. Reg. 37,801 (June 24, 2026) ........ 19

*Trust*, Black's Law Dictionary (12th ed. 2024) ........ 16

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade (USCIT R.), defendants, the United States, U.S. Customs and Border Protection, and Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection, respectfully submit this motion to dismiss the complaints filed by plaintiff Harbourview Products International, LLC (Harbourview) in Court No. 26-01471, ECF No. 2 (Harbourview Compl.), and MSR Imports, Inc. (MSR) in Court No. 26-02645, ECF No. 2 (MSR Compl.).

**BACKGROUND**

In 2025, the President imposed tariffs under the International Emergency Economic Powers Act (IEEPA). Shortly after, certain companies sued in district courts throughout the country as well as in this Court. In February 2026, the U.S. Supreme Court held that IEEPA did not authorize tariffs, and also held that this Court had exclusive jurisdiction over the IEEPA tariff challenges. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 240 n.1 (2026). Since then, over 84,000 parties have filed complaints, including multiple proposed class actions, seeking refunds of IEEPA tariffs in this Court. Simultaneously, U.S. Customs and Border Protection (CBP) has developed a new functionality within the Automated Commercial Environment (ACE), the Consolidated Administration and Processing of Entries (CAPE), for importers or their brokers to request IEEPA tariff refunds. Through CAPE, CBP has made tremendous progress—more than three quarters of the total amount of IEEPA tariffs collected are already being processed and CBP has refunded billions of dollars.

Based on the allegations in their own complaints, the plaintiffs in these cases, Harbourview and MSR, are not importers of record and were therefore not responsible for paying IEEPA tariffs to the United States. Instead, they paid money to express consignment

operators, Federal Express Corporation (FedEx) and United Parcel Service (UPS), for the service of importing goods into the United States.[1] Harbourview Compl. at ¶¶ 7, 17, 20, 24, 85; MSR Compl. at ¶¶ 4, 6, 7, 20, 41. For Harbourview, the importer of record was UPS. Harbourview Compl. at ¶ 7. For MSR, the importer of record was FedEx. MSR Compl. at ¶ 6-7. Harbourview and MSR seek to establish classes of persons and entities who paid money to FedEx and UPS that can be traced back to the IEEPA tariffs.[2] Harbourview Compl. at ¶ 71; MSR Compl. at ¶ 55. To establish jurisdiction, both Harbourview and MSR rely primarily on 28 U.S.C. § 1581(i). Harbourview Compl. at ¶¶ 11-13; MSR Compl. at ¶¶ 16-17. They assert that they have standing because they paid duties on imported goods subject to the IEEPA tariffs. Harbourview Compl. at ¶ 16; MSR Compl. at ¶ 20.

## SUMMARY OF THE ARGUMENT

At the outset, there is no live controversy over the lawfulness of the IEEPA tariffs or FedEx's and UPS's entitlement to refunds because the Government is already in the process of

---

[1] Although Harbourview alleges that it "is an Importer of Record," it does not allege that it was the importer of record for any of the goods for which it paid money to UPS that is traceable to the IEEPA tariffs. Harbourview Compl. at ¶ 17. The entire premise of Harbourview's complaint is that it paid money to UPS. *See, e.g.*, *id.* at ¶ 73(b) (stating Harbourview's and class's claims are common because they were "overcharged for goods" by UPS). If Harbourview was an importer of record for goods subject to IEEPA tariffs, it does not need this lawsuit to procure a refund. It could simply use the CAPE program to receive a refund (assuming it meets CAPE's eligibility requirements), rather than request a refund to UPS and for UPS to pass along that refund to Harbourview, *id.* at ¶ 92. Further, UPS could not receive Harbourview's refund for any entries for which Harbourview acted as the importer of record. *See* 19 C.F.R. § 24.36(b) (explaining that, when refunding duties, CBP is generally required to certify such refunds for payment to the importer of record, with some exceptions not applicable here).

[2] We note that this Court has already certified a class of "[a]ll importers of record who paid duties imposed by the Challenged Tariff Orders between February 1, 2025, and February 19, 2026, excluding any entity that has separately filed an action seeking to recover IEEPA duties payments." *Freestyle World, Inc. v. U.S. Customs & Border Prot.*, No. 26-01088, 2026 WL 3027676, at *16 (Ct. Int'l Trade Oct. 8, 2026).

facilitating refunds through the CAPE system. Accordingly, plaintiffs' claims against the Government challenging the IEEPA tariffs and seeking injunctive and declaratory relief regarding refunds to FedEx and UPS are moot. Further, to the extent plaintiffs contend that they are entitled to monetary damages from the Government, as opposed to from FedEx and UPS, they have no viable cause of action for such relief.

Additionally, this Court should dismiss plaintiffs' complaints for lack of jurisdiction because plaintiffs are not importers of record and therefore lack standing to bring their claims pursuant to 28 U.S.C. § 1581(i). MSR and Harbourview have failed to establish that they suffered a redressable injury caused by the IEEPA tariffs because only the actual importers of record, in this case FedEx and UPS, were liable for paying IEEPA tariffs and are accordingly are entitled to receive IEEPA refunds (assuming they file a CAPE declaration and satisfy all of the eligibility requirements of CAPE). The Government did not require FedEx and UPS to pass along these costs to customers like MSR and Harbourview, and their alleged entitlement to damages accordingly arises from the independent, private relationship between those parties. Although MSR attempts to establish that FedEx acted as a Government agent, MSR's argument is based on a flawed reading of the applicable Executive Orders, which apply to shipments sent through the international postal network, not express consignment operators like FedEx and UPS. MSR's and Harbourview's remaining jurisdictional citations are unavailing because they either do not apply to this Court or do not apply to plaintiffs' claims.

## ARGUMENT

### I. Standard of Review

In deciding a motion to dismiss for lack of jurisdiction pursuant to USCIT R. 12(b)(1), the Court accepts as true all uncontroverted factual allegations in the complaint. *Engage*

*Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) (analyzing identical Federal Rule of Civil Procedure). Although "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)), because "the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The plaintiffs bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988), and "must support [their] allegations by competent proof," *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp*., 546 U.S. 500, 514 (2006); s*ee also* USCIT R. 12(h)(3).

A party may also assert by motion the defense of "failure to state a claim upon which relief can be granted." USCIT R. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under this standard, a party's pleading must contain factual allegations that establish "more than a sheer possibility that a defendant has acted unlawfully" or a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Id.*

In deciding a Rule 12(b)(6) motion, this Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the claimant." *Wanxiang Am.*

*Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021). The Court, however, is not required to accept legal conclusions asserted in the complaint. *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). Moreover, "[w]hen there is more to the story than what appears in the complaint, the court may also consider matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record[.]" *VoestAlpine USA Corp. v. United States*, 578 F. Supp. 3d 1263, 1276 (Ct. Int'l Trade 2022) (cleaned up) (quotations omitted).

**II. This Court Should Dismiss Any Claim Against the Government as Moot**

Plaintiffs' complaints express a concern that the Government will retain the amounts collected from the IEEPA tariffs and that the Government would attempt to frustrate any refunds to the entities that paid IEEPA tariffs. Harbourview Compl. at ¶¶ 1, 9, 29, 74; MSR Compl. at ¶¶ 7, 16, 20, 60. To the extent plaintiffs seek a Court order requiring that IEEPA refunds be paid to UPS and FedEx, such claims are moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Where "even a favorable decision," *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982), "could have no practical effect" for plaintiffs, *SKF USA, Inc. v. United States*, 512 F.3d 1326, 1328 (Fed. Cir. 2008) (per curiam), their request for injunctive or declaratory relief is moot. *See Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1378 (Fed. Cir. 2022) (holding that "[t]here is no question that the injunctive relief [plaintiff] seeks is moot insofar as [plaintiff] seeks an order enjoining" the performance of a contract that the defendant "already terminated").

As we explain further below, the claims that the Government will retain the amounts collected from the IEEPA tariffs or that the Government would attempt to obfuscate any refunds

to the entities that paid IEEPA tariffs are moot. Both plaintiffs at various points suggest that CBP is improperly interfering with IEEPA refunds to FedEx and UPS. *See* Harbourview Compl. at ¶ 92 (seeking a declaratory judgment that "CBP lacks jurisdiction over the illegally held tariffs and cannot interfere with UPS' payment of the tariff refunds to Plaintiff and the Class"); MSR Compl. at 22 (seeking "[a]n Order directing CBP to liquidate all unliquidated entries subject to IEEPA duties without the unlawful IEEPA duties (*i.e.* process such entries without the unlawful tariffs)"). UPS and FedEx, as importers of record, are the parties legally entitled to the refund of any improperly collected duty. *See* 19 U.S.C. § 1505(a)-(b); 19 C.F.R. § 24.36(b); *see also infra* sec. III-IV. To that end, both FedEx and UPS have invoked the available administrative process to obtain refunds of IEEPA duties paid on entries that have not been fully liquidated. And both have brought suit in this Court seeking refunds of IEEPA duties paid and have obtained orders entitling them to such refunds. *See Federal Express Corp. v. United States*, Court No. 26-01150 (Ct. Int'l Trade), Dkt. No. 14; *United Parcel Service Co v. United States*, Court No. 26-05050 (Ct. Int'l Trade), Dkt. No. 8. That refund process is well underway. For example, FedEx's public SEC filings indicate that it received more than $800 million in refunds as of May 31, 2026. *See* FedEx, Annual Report (Form 10-K) at 42 (May 31, 2026), https://www.sec.gov/Archives/edgar/data/1048911/000104891126000105/fdx-20260531.htm.

The orders that plaintiffs seek here—requiring CBP to refund any illegally collected IEEPA duties to FedEx and UPS—have already been entered in FedEx and UPS's cases, and many IEEPA duties have already been refunded. Therefore, the issues presented by plaintiffs relating to whether the Government will refund IEEPA duties to FedEx and UPS are simply no longer live, and therefore plaintiff's claims are moot. *See Powell*, 395 U.S. at 496.

To the extent plaintiffs contend that FedEx and UPS are required to pass on to them any portion of the refunds that FedEx and UPS have received or are in the process of receiving from the Government, that dispute does not involve the Government. It is purely between plaintiffs and FedEx/UPS. CBP has no knowledge of the contractual relationship between plaintiffs and FedEx/UPS, to which the Government is not a party. CBP similarly has no records of the identities of individuals or companies who paid IEEPA surcharges to FedEx and UPS. Moreover, as MSR recognizes, FedEx has publicly stated its intent to pass any IEEPA refunds received on to its customers. MSR Compl. at ¶ 7. UPS has expressed similar intent. *IEEPA Tariff Refund Process*, UPS, https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds (last visited Nov. 17, 2026). Both FedEx and UPS have set up sophisticated processes to transmit IEEPA refunds to their customers. *See, e.g.*, *id.* ("UPS has submitted refund requests for all Phase One-eligible shipments where we served as the IOR. After UPS receives refunds from CBP, we will work diligently to issue IEEPA tariff refunds, and any applicable interest, to the payors as quickly as possible."). Whether plaintiffs have a legal right to IEEPA refunds paid to UPS and FedEx depends on the relationship between plaintiffs and FedEx/UPS and the terms of any agreement between them. Indeed, litigation between FedEx and UPS and their customers is ongoing in other courts. *See In re FedEx Tariff Litigation*, No. 2:26-cv-02181 (W.D. Tenn. June 1, 2026); *In re UPS Tariff Litigation*, No. 1:26-cv-2097 (N.D. Ga. April 14, 2026). Regardless of the answer to that question, it is clear that the dispute between UPS/FedEx and their respective customers does not involve the Government, and does not belong in this Court, as this Court's jurisdiction under 28 U.S.C. § 1581(i) extends only to "[c]ivil action[s] commenced against the United States, its agencies, or its officers."

To the extent plaintiffs allege that they are entitled to damages from the United States, there is no cause of action for such a claim, and the United States has not waived sovereign immunity for such relief. Pursuant to 28 U.S.C. § 1581(i), this Court has exclusive jurisdiction over any civil action "aris[ing] out of any law of the United States providing for . . . embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." The Administrative Procedure Act (APA) provides the cause of action, and section 1581(i) provides the waiver of sovereign immunity for such claims. *Id.* § 2640(e); 5 U.S.C. § 706. To commence a civil action invoking this Court's jurisdiction under 28 U.S.C. § 1581(i), the plaintiff must be "adversely affected or aggrieved by an agency action within the meaning of [the APA]." 28 U.S.C. § 2631(i). The APA establishes a private cause of action to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," but only for "relief other than money damages." 5 U.S.C. § 702. Thus, this Court lacks jurisdiction to consider, for example, Harbourview's claim for "damages in the amount of any tariffs collected by Defendants pursuant to the challenged orders and order refunds and associated fees thereof plus interest." Harbourview Compl. at 21; *see also XYZ Corp. v. United States*, 253 F. Supp. 3d 1257, 1271 n.21 (Ct. Int'l Trade 2017) ("In any event, the APA does not authorize monetary relief." (citing 5 U.S.C § 702 and *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006))).

Plaintiffs, who are customers of FedEx and UPS, stand in contrast to importers of record who are able to invoke the APA's cause of action. The relief that importers of record have requested is an order to liquidate (or reliquidate) their entries without regard to IEEPA duties. *See, e.g.*, *See Federal Express Corp. v. United States*, No. 26-01150 (Ct. Int'l Trade), Dkt. No. 14 (reliquidation order). This is injunctive relief, not a money judgment. There is no mechanism

through which plaintiffs can obtain similar injunctive relief related to the liquidation or reliquidation of entries on which they are not the importer of record.

Taken together, no matter how plaintiffs' claims are understood, they are either moot or there is no cause of action for which the United States has waived its sovereign immunity.

## III. This Court Should Dismiss Plaintiffs' Complaints for Lack of Standing

In any event, even if plaintiffs' claims against the Government were not moot, plaintiffs still would lack standing to bring those claims at the outset.

### A. Plaintiffs Lack Standing for their Claims Under 28 U.S.C. § 1581(i)

"Courts created by statute can have no jurisdiction but such as the statute confers." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (quotation omitted). As a court created by statute, this Court "'operates within precise and narrow jurisdictional limits' and 'cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant.'" *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1051 (Fed. Cir. 2012) (quoting *Trayco, Inc. v. United States*, 994 F.2d 832, 836 (Fed. Cir. 1993)).

However, in addition to identifying a statute that endows this Court with jurisdiction, a plaintiff must establish it is a proper party to bring its claims. "The Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party[.]" *Warth*, 422 U.S. at 499. Thus, a threshold issue in every case is whether "the plaintiff himself" has suffered an injury resulting from the challenged action sufficient to establish standing. *Id.* "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.* at 498. In these cases, plaintiffs have failed to establish that they are proper parties to sue the United States in this Court under either the constitutional or prudential standing doctrines.

**1. Article III Standing**

Pursuant to Article III of the United States Constitution, a party bringing suit must present a live case or controversy—that is, "a plaintiff must demonstrate (i) that [it] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). A plaintiff is required to establish standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). The injury-in-fact prong requires the plaintiff to "show it has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Incyte Corp. v. Sun Pharm. Indus., Inc.*, 136 F.4th 1096, 1100 (Fed. Cir. 2025) (quotation omitted). An alleged injury is redressable only if it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Moreover, it is not enough to allege that the challenged conduct may result in someone else suffering a monetary loss. *See Finkelman v. NFL*, 810 F.3d 187, 195 (3d Cir. 2016) (because plaintiff did not buy Super Bowl ticket, he "suffered no out-of-pocket loss" and, thus, "no injury-in-fact" sufficient to challenge ticket prices). As applied to the IEEPA tariffs, importers of record who paid the tariffs have standing to seek a refund of duties paid—but the importers' customers do not, and did not at any stage of the IEEPA litigation. For example, in a case challenging an allegedly discriminatory tariff classification, the Federal Circuit recognized that the "[i]mporters suffer an injury in fact as they are legally required to pay the allegedly discriminatory tariff," but "purchasers have no remedy to challenge [a] tariff classification." *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010). Indeed, this Court

previously dismissed an IEEPA challenge by a non-importer who alleged injury from "manufacturers[] and businesses [] pass[ing] the cost of doing business, caused by the duty taxes those tariffs put in place, on to the consumers," for lack of standing. *Barnes v. United States*, 797 F. Supp. 3d 1379, 1384 (Ct. Int'l Trade 2025); *cf. Oregon v. United States*, 835 F. Supp. 3d 1307, 1324-27 (Ct. Int'l Trade 2026) (concluding that importer states possessed standing but non-importer states lacked standing). This is because the requirements of traceability and redressability are not satisfied where an injury "results from the independent action of some third party not before the court,"[3] such as an importer. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quotation omitted).

According to MSR's own complaint, MSR is "a U.S.-based receiver of goods," MSR Compl. at ¶ 4, not an importer of record. MSR is clear that it paid moneys to FedEx, not to the United States. *Id.* at ¶¶ 4, 6, 20. MSR acknowledges that, because it is not an importer of record, "FedEx, not the shippers and consumers to whom FedEx passed on the IEEPA tariffs," is eligible to request a refund through the CAPE process. *Id.* at ¶ 41. Indeed, the class MSR seeks to certify is based entirely on payment of funds "to FedEx" or assessed "by FedEx," not the United States. *Id.* at ¶ 55.

Likewise, Harbourview alleges that "UPS illegally imposed import tariffs" on goods, Harbourview Compl. at ¶ 7, and that Harbourview "purchased items subject to the illegal IEEPA tariffs and was forced to pay excessive import tariffs to UPS before the goods were delivered," *id.* at ¶ 17. Harbourview's complaint repeatedly states that UPS collected Harbourview's money, even citing UPS's "Import and Export Clearance" service provided to customers. *Id.* at ¶¶ 23-

[3] Of course, FedEx and UPS are currently before the Court, but they are not proper defendants in this lawsuit for the reasons discussed above.

24. Like MSR, Harbourview seeks to establish a class of individuals who paid money to an importer of record, in Harbourview's case UPS, not to the United States. *Id.* at ¶ 71.

However, there was no directive by the Government requiring importers of record to pass along any tariff charge to any customer. Rather, the Government only required importers of record to deposit IEEPA duties. *See* 19 C.F.R. § 141.1(b)(1) (establishing that importers of record are liable for all duties). It never required importers of record to charge IEEPA duties to third parties. Any decisions to pass through tariff charges from an importer of record to another party were decisions of that importer of record, not the Government. Moreover, 19 U.S.C. § 1505(a) provides that "importer[s] of record" are required to deposit duties and fees, and § 1505(b), and CBP's implementing regulations, dictate the refunds of excess moneys deposited, together with interest thereon, must be certified for payment only to importers of record. *See* 19 C.F.R. § 24.36(b) ("Refunds of excessive duties, taxes, fees or interest shall be certified for payment *to the importer of record* unless a transferee of the right to withdraw merchandise from bonded warehouse is entitled to receive the refund under section 557(b), Tariff Act of 1930, as amended, or an owner's declaration has been filed in accordance with section 485(d), Tariff Act of 1930, or a surety submits evidence of payment to Customs, upon default of the principal, of amounts previously determined to be due on the same entry or transaction." (emphasis added)).

Although MSR and Harbourview allege that they paid moneys to FedEx and UPS that they believe was attributable to IEEPA tariffs, they do not plausibly allege that such moneys were paid directly to the United States for imported merchandise for which MSR or Harbourview were importers of record. Because only importers of record are entitled to refunds, FedEx and UPS, as importers of record, are the entities entitled to obtain IEEPA refunds, not MSR and Harbourview. It is a "bedrock principle that a federal court cannot redress injury that results

from the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (quotation omitted).

Neither the doctrine of standing for unregulated parties nor this Court's decision in *V.O.S. Selections, Inc.* support standing for these plaintiffs. When "a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*," as is true of MSR and Harbourview, "standing"—while "not precluded"—"is ordinarily substantially more difficult to establish." *All. for Hippocratic Med.*, 602 U.S. at 383 (quotation omitted). That is because, even where unregulated parties have suffered actual injury, they "often . . . have more difficulty establishing causation—that is, linking their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id.* "The causation requirement precludes" both "speculative links . . . , where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs," and "attenuated links . . . , where the government action is" too "far removed from its distant (even if predictable) ripple effects." *Id.* In *V.O.S.*, this Court concluded that "[a] non-importer plaintiff may 'fairly employ economic logic' to establish a concrete and particularized injury-in-fact that is fairly traceable to a challenged tariff" where it can show "that 'this injury would be prevented by a declaratory judgment and injunction' setting that tariff aside." *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1367 (Ct. Int'l Trade 2025) (quoting *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1333 (Fed. Cir. 2008)).

*V.O.S.* is inapplicable here.[4] The *V.O.S.* and *Canadian Lumber* holdings address prospective injunctive relief, not retrospective alleged damages like those sought by MSR and

---

[4] To be clear, we respectfully disagree with *V.O.S.*'s holding on this point. Injury to purchasers in the form of higher costs from importers is too attenuated from Government action to establish standing to challenge the imposition of a tariff. *See Rack Room Shoes v. United*

Harbourview. This distinction matters for the Court's standing inquiry. "[A] plaintiff must 'demonstrate standing separately for each form of relief sought,'" meaning that "a plaintiff 's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (quoting *Friends of the Earth*, 528 U.S. at 185). Here, the economic logic employed by a purchaser who pays increased costs from importers (*i.e.*, the tariffs are increasing costs to the importer-of-record, who passes them on to purchaser plaintiffs; if the tariffs are invalidated, those costs will no longer be passed on to plaintiff), does not apply to retrospective relief. Once costs have already been passed on by the importer, the purchaser-plaintiff's injury was caused by the importer, not the Government. Put differently, the "government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *All. for Hippocratic Med.*, 602 U.S. at 383.

The lack of causation by the Government is apparent here. FedEx and UPS are independent private actors, and any tariff surcharges are informed by the individual agreements between FedEx and UPS and the plaintiffs. Such agreements are driven by multiple, complex market forces. For example, plaintiffs in other cases against FedEx allege that FedEx collected additional charges beyond the price of the IEEPA tariff. *See In re FedEx Tariff Litigation*, No. 2:26-cv-02181 (W.D. Tenn. June 1, 2026), Dkt. No. 42 at ¶¶ 49-50. On the other hand, it is conceivable that, for business reasons, an importer may decide to refrain from passing through the full cost of duties onto its customers. Whether an importer of record like FedEx or UPS may choose to pass on some cost of the tariffs to its customers is immaterial for purposes of the legal

---

*States*, 718 F.3d 1370, 1375 (Fed. Cir. 2013); *Totes-Isotoner*, 594 F.3d at 1352. Nevertheless, because the present plaintiffs are seeking retrospective damages rather than prospective injunctive relief, the Court need not consider *V.O.S.*

liability of the importer of record for the duties, because the importer of record is liable for the duties regardless of whether the importer chooses to pass on the cost to its customers. 19 C.F.R. § 141.1(b)(1). The Government has no way of knowing whether any pass-through occurred and, if so, to whom or in what amount. The inflection point in the chain of events described in plaintiffs' complaints is the actions of FedEx and UPS, and the resulting agreements between plaintiffs and FedEx and UPS, break the chain of causation between the Government and plaintiffs. Any injury to plaintiffs is caused by and traceable to the actions of FedEx and UPS only, not the Government.

Because MSR and Harbourview have not pleaded that they are importers of record for merchandise subject to IEEPA tariffs, they have not established standing to sue the Government for a refund.

**2. Prudential Standing**

In addition to demonstrating Article III standing, a plaintiff must also establish prudential standing to bring a suit. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). "One aspect of prudential standing is third-party standing," a principle that "'limits access to the federal courts to those litigants best suited to assert a particular claim.'" *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1332 (Ct. Int'l Trade 2021) (quoting *PrimeSource Bldg. Prods. v. United States*, 494 F. Supp. 3d 1307, 1331 (Ct. Int'l Trade 2021) (Baker, J., concurring)). Thus, even if a plaintiff demonstrates Article III standing, "a court may nonetheless deny standing if the litigant seeks to vindicate not its own legal right or interest, but instead the legal rights or interests of a third party." *Id.* at 1332-33 (quotation omitted). To show third-party standing to vindicate the rights of another, the plaintiff must establish "a close relationship with the person who possesses the right" and "a hindrance [to the third party's] ability to protect its own interests." *Id.* at 1333 (quotation omitted).

Harbourview seeks a declaratory judgment that CBP must "refund the illegal IEEPA tariffs to UPS." Harbourview Compl. at 18, ¶ 92(f). Harbourview also requests the establishment of a constructive trust, Harbourview Compl. at ¶¶ 98-103, which is an "'equitable remedy by which a court recognizes that a claimant has a better right to certain property than the person who has legal title to it.'" *Sw. Airlines Co. v. United States*, 777 F. Supp. 3d 1318, 1329 (Ct. Int'l Trade 2025) (quoting *Trust*, Black's Law Dictionary (12th ed. 2024)), *appeal dismissed*, No. 2025-1797, 2025 WL 2954102 (Fed. Cir. Oct. 20, 2025). Implicit in Harbourview's declaratory-judgment and constructive-trust requests is a concession that it is not the rightful recipient of a refund from the United States. The prudential standing doctrine counsels against allowing Harbourview to bring a case seeking to vindicate the rights of UPS where, as here, UPS has its own case against the United States seeking IEEPA refunds and is able to protect its own interests. *See United Parcel Service Co. v. United States*, Court No. 26-05050. In fact, this Court recently entered an order in UPS's case authorizing reliquidation, permitting UPS to pursue refunds through the CAPE system. *Id.*, Dkt. No. 8.

Although MSR does not present a constructive-trust claim, it likewise requests relief on behalf of another, FedEx. MSR seeks an order directing CBP to reliquidate entries subject to IEEPA tariffs, MSR Compl. at 22, yet reliquidation would result in funds returning to the importer of record, rather than MSR, 19 C.F.R. § 24.36(b). FedEx has its own case in which it is requesting the same money that MSR now attempts to seek on FedEx's behalf. *See Federal Express Corp. v. United States*, Court No. 26-01150. Indeed, on July 21, 2026, this Court entered an order providing the Government with the authority to reliquidate FedEx's entries, which has required FedEx to pursue its refund through the CAPE process. *Id.*, Dkt. No. 14.

Plaintiffs are not the appropriate ("best suited") parties to bring claims for refunds. They are not importers of record and the actual parties that appear to have been the importers of record based on the allegations in the complaints, UPS and FedEx, are already seeking refunds in this Court. Accordingly, this Court should apply the prudential standing doctrine and dismiss plaintiffs' complaints.

### B. MSR Cannot Establish Standing Through Its Allegations of "Agency"

MSR contends that this Court has jurisdiction over this case because "FedEx is an agent of the Government." MSR Compl. at ¶ 17. Not so. As explained below, MSR's argument conflates two distinct regulatory frameworks for the collection of duties on imports: imports through the international postal network and imports by express consignment operators like FedEx and UPS. Although Harbourview does not present the agency theory that MSR presents, its complaint relies on the same misunderstanding. *See, e.g.*, Harbourview Compl. at ¶ 22 (stating UPS offers "mail" services); *id.* at ¶ 85 (stating UPS "is a carrier imposing tariffs on goods").

#### 1. Statutory and Regulatory Background

##### i. Imports Through the International Postal Network

An option exists to import goods via mail sent from a foreign country's post office and delivered to a recipient in the United States by the United States Postal Service (USPS) (the international postal network). Such "[i]mportations by mail are subject to the same requirements and restrictions as importations by any other means," with some exceptions. 19 C.F.R. § 145.0(a). The exception relevant to this case was the *de minimis* rule: prior to July 2025, many imports sent through the international postal network were valued at $800 or less and qualified for duty-free treatment under 19 U.S.C. § 1321(a)(2)(C) and CBP's implementing regulations at 19 C.F.R. §§ 10.151 and 10.153 (2025). Under the regulations then in effect, such

mail shipments containing merchandise valued not over $800 and otherwise meeting the regulatory conditions were "pass[ed] free of duty and tax, without preparing an entry," and any international mail shipments that contained merchandise valued over $800, or that were otherwise found to be dutiable, required a CBP officer to manually create an entry and duty bill, for which USPS was responsible for collecting from the U.S. recipient. *See* 19 C.F.R. §§ 145.31, 145.1(a)-2(b) (2025).

Executive Order 14324 suspended *de minimis* treatment of goods valued at $800 or less for both mail imports and non-mail imports starting in August 2025. *Axle of Dearborn, Inc. v. Dep't of Com.*, No. 25-00091, 2026 WL 2350891, at *3 (Ct. Int'l Trade Aug. 13, 2026) (per curiam). Important here, the suspension of *de minimis* treatment was effectuated differently for imports through the international postal network than for all other imports. For international mail, the Executive Order created an interim process, *see* Executive Order 14324 § 2(b), through which "[t]ransportation carriers delivering shipments to the United States through the international postal network, or other parties if qualified in lieu of such transportation carriers, must collect and remit duties to CBP using the methodology described in either subsection (b) or (c) of this section." *Id.* § 3(a).

For mail shipments entered under the interim process established pursuant to § 2(b) of Executive Order 14324, the transportation carrier or approved qualified party who declared and paid the duties to CBP is the importer, as the consignee. *See* 19 C.F.R. § 101.1 ("'Importer' means the person primarily liable for the payment of any duties on the merchandise, or an authorized agent acting on his behalf. The importer may be: (1) The consignee . . . ."); 19 C.F.R. § 143.26(b) ("A shipment of merchandise valued at $800 or less which qualifies for informal

entry under 19 U.S.C. 1498 . . . may be entered, using reasonable care, by the . . . consignee of the shipment . . . .”).

In June 2026, the interim process described above was replaced with a new informal entry process for postal imports. *See Indefinite Suspension of the De Minimis Exemption for Mail Shipments and New Postal Informal Entry Process*, 91 Fed. Reg. 37,801 (June 24, 2026).

**ii. Express Consignment Operators**

The interim process for collecting duties on international mail described above did not apply to other kinds of imports. Instead, the Executive Order provided:

> [A]ll such shipments, except those sent through the international postal network, shall be subject to all applicable duties, taxes, fees, exactions, and charges. . . . Entry for all shipments that–prior to the effective date of this order–qualified for the *de minimis* exemption, except for shipments sent through the international postal network, shall be filed using an appropriate entry type in the Automated Commercial Environment (ACE) by a party qualified to make such entry.

Executive Order 14324 § 2(a).

Express consignment operators, such as FedEx and UPS, fall under this general, non-mail, framework.[5]

> An ‘express consignment operator or carrier’ is an entity operating in any mode or intermodally moving cargo by special express commercial service under closely integrated administrative control. Its services are offered to the public under advertised, reliable timely delivery on a door-to-door basis. An express consignment operator assumes liability to Customs for the articles in the same manner as if it is the sole carrier.”

19 C.F.R. § 128.1(a). Imports by express consignment operators “must comply with the requirements of the CBP Automated Commercial Environment (ACE) or any other CBP–

[5] While FedEx and UPS may also import goods in roles other than express consignment operator, we do not discuss such roles here because those imports clearly fall outside the scope of the international postal network raised by MSR.

authorized electronic data interchange system," *id.* § 128.23(b)(1), and may utilize both informal entry procedures, *id.* § 128.24, and formal entry procedures, *id.* § 128.25. While the precise role of the express consignment operator depends on the nature of the import transaction and the express consignment operator's contractual relationship with its customer, it is always the importer of record that is legally responsible for paying the applicable duties, and as a result is the entity entitled to any refund of an improperly collected duty (with some limited exceptions not applicable to Harbourview's and MSR's complaints).

### 2. FedEx and UPS are Express Consignment Operators, Not Government Agents

In an attempt to allege an agency relationship between the United States and FedEx, MSR's complaint mistakenly relies on the portions of the Executive Order and implementing regulations applicable to international mail. However, FedEx and UPS are express consignment operators, not transportation carriers delivering shipments to the United States through the international postal network. *See, e.g.*, *Grp. Italglass U.S.A., Inc. v. Untied States*, 839 F. Supp. 868, 873 (Ct. Int'l Trade 1993) (noting that "Federal Express [is] a private express delivery service unaffiliated with the United States Postal Service," which cannot be used to satisfy "certified or registered mail" requirements). Given this important distinction, MSR's entire theory of agency-based standing falls apart.

MSR specifically contends that "[t]he Government designated FedEx as its agent by directing that 'transportation carriers or other Approved Qualified Parties must collect and remit duties to CBP . . . .' In doing so, the Government imbued FedEx with actual authority to collect and remit tariffs on its behalf from receivers of international postal shipments." MSR Compl. at ¶ 33 (quoting Executive Order 14324 § 3). But that provision of the Executive Order governs international mail only. Section 3 of Executive Order 14324 specifies its application solely to

"[t]ransportation carriers delivering shipments to the United States through the international postal network, or other parties if qualified in lieu of such transportation carriers." Executive Order 14324 § 3(a). But FedEx and UPS are not carriers delivering shipments to the United States through the international postal network; they are express consignment operators. *See, e.g.*, *United States v. Abbouchi*, 502 F.3d 850, 853 (9th Cir. 2007) (observing "express consignment services like UPS or FedEx"); *United States v. UPS Customhouse Brokerage, Inc.*, 558 F. Supp. 2d 1331, 1339 (Ct. Int'l Trade 2008) ("UPS is an express consignment operator[.]"), *aff'd in part, vacated in part on other grounds*, 575 F.3d 1376 (Fed. Cir. 2009). International mail involves an exchange of mail from a foreign postal service to USPS. *See generally* 39 U.S.C. § 407. In contrast, express consignment services, like FedEx and UPS, provide cargo "delivery on a door-to-door basis," without the use of a domestic or foreign postal service. 19 C.F.R. § 128.1(a). In sum, FedEx and UPS are not international mail or part of the "international postal network," and therefore the provisions of the Executive Order invoked that MSR alleges establish an agency relationship are wholly inapplicable to FedEx and UPS.

Instead, imports by FedEx and UPS are governed by § 2(a) of the Executive Order 14324, which provide that "all such shipments, except those sent through the international postal network, shall be subject to all applicable duties, taxes, fees, exactions, and charges," and "shall be filed using an appropriate entry type in the Automated Commercial Environment (ACE) by a party qualified to make such entry." Therefore, the only change to FedEx and UPS effectuated by Executive Order 14324 is that entries that previously were subject to the *de minimis* exception now fall under the same express consignment regulations, which, as relevant here, are generally the same as imports by other means, *see* 19 C.F.R. §§ 128.3-128.5. Taken together, even

assuming an agency relationship could arise from Executive Order 14324 (and it did not), the Executive Order language on which it relies simply does not apply to FedEx or UPS.[6]

The other sources of authority for the purported "agency" relationship cited by MSR fare no better. MSR cites 19 C.F.R. § 113.64 (2018), which sets out bond requirements for carriers, as evidence of the agency relationship. MSR Compl. ¶ 35. But these are regulations of international carriers themselves; they do not require the international carrier to collect duties on the Government's behalf or purport to create an agency relationship. MSR similarly cites the requirement for "any carrier that transports international postal shipments" to have "an international carrier bond." *Id.* (citing *Notice of Implementation of the President's Executive Order 14324, Suspending Duty-Free De Minimis Treatment for All Countries*, 90 Fed. Reg. 42418 (Sep. 2, 2025)). But, first, that provision, by its own terms, only applies to international mail carriers, of which FedEx and UPS are not. And second, the requirement for carriers to obtain a bond to insure their *own* legal obligations to CBP does not make such a carrier an *agent* of the United States. Therefore, the other regulations cited do not save MSR's agency theory of standing.

Even setting aside MSR's reliance on non-pertinent regulations, an entity's mere compliance with import entry requirements or payment of duties does not render that entity a

---

[6] Rather, the special importation system for international mail instead applied to qualified parties like iGlobal Exports LLC (d/b/a Zonos). This Court already considered these same international mail regulations when it denied iGlobal's motion for leave to file an amicus curae brief in the *Freestyle* litigation. *See Freestyle World Inc. v. United States*, Court No. 26-01088 (Ct. Int'l Trade), Dkt. No. 57. To be clear, Executive Order 14324 does not establish an agency relationship between the United States and iGlobal or other parties subject to the international mail regulations. However, we do not, this Court need not, address that issue in this case because MSR's complaint does not pertain to these qualified parties.

Government agent. *Cf. United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1013 (Fed. Cir. 1986) (holding that licensed customs brokers act as agents of importer, not as agents of government).

In sum, the language MSR invokes to establish an agency relationship between FedEx and the United States does not apply to FedEx, because FedEx does not carry shipments to the United States sent through the international postal network. Rather, MSR alleges that it issued payments to FedEx, an express consignment operator which are governed by MSR's own contractual relationship with FedEx. Neither FedEx nor UPS "assess[ed]" duties and "remit[ed]" them to CBP, MSR Compl. at ¶ 42; rather the companies provided services to the plaintiffs pursuant to the terms of whatever agreement existed between them.

## IV. Plaintiffs' Remaining Jurisdictional Arguments Are Unavailing Because They Have Not Identified Any Statute Establishing that this Court Possesses Jurisdiction Over Their Claims

In addition to their primary reliance on 28 U.S.C. § 1581(i), plaintiffs cite a plethora of other statutes as their jurisdictional bases for bringing their complaints in this Court. Harbourview Compl. at ¶¶ 11-14; MSR Compl. at ¶¶ 15-20. None are availing.

Federal question jurisdiction and diversity jurisdiction are vested in the district courts, not the Court of International Trade. *See* 28 U.S.C. § 1331 ("The *district courts* shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (emphasis added)); *id.* § 1332(d)(2) (providing that "*district courts* shall have original jurisdiction" of class actions between diverse parties (emphasis added)); *see also Andritz Sundwig GMBH v. United States*, 322 F. Supp. 3d 1360, 1364 n.3 (Ct. Int'l Trade 2018) (explaining plaintiff's reliance on § 1331 to establish Court of International Trade's jurisdiction was "erroneous"); *Giorgio Foods, Inc. v. United States*, 515 F. Supp. 2d 1313, 1323 n.4 (Ct. Int'l Trade 2007) ("The Court of International Trade's bases for subject matter jurisdiction are

embodied in 28 U.S.C. § 1581-1584, and not in the federal district courts' federal question statute, 28 U.S.C. § 1331.").[7]

The Court of International Trade also does not possess supplemental jurisdiction like that granted to district courts. *Sioux Honey Ass'n*, 672 F.3d at 1051-54; *see also Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*, 823 F. Supp. 2d 1365, 1381 (Ct. Int'l Trade 2012) ("Nor may we exercise jurisdiction . . . by invoking supplemental jurisdiction as granted by Congress to district courts, or common law pendant or ancillary jurisdiction." (citations omitted)). The supplemental jurisdiction granted to this Court is limited to "any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise." 28 U.S.C. § 1583. However, plaintiffs have not brought a counterclaim, cross-claim, or third-party action against either the Government or FedEx and UPS, nor could they. *See Sioux Honey Ass'n*, 672 F.3d at 1051 (explaining that § 1583 did not apply to plaintiff's claims against surety defendants because claims were not counterclaims, cross-claims, or third-party actions in nature of impleader); *Thyssenkrupp Mexinox S.A. de C.V. v. United States*, 616 F. Supp. 2d 1376, 1381 n.14 (Ct. Int'l Trade 2009) (explaining plaintiff could not rely on § 1583 jurisdiction to establish claim against defendant-intervenor because the cause of action did not involve a co-party as required for cross-claims, respond to an opposing party's affirmative claim as required for counterclaims, or assert a third-party claim against a non-party as required for impleader).

---

[7] Even in the district courts, the United States, its agencies, and its officers acting in their official capacities, are not a state or citizen of a state and cannot be sued under § 1332. *Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991).

Plaintiffs' scattershot attempts at establishing jurisdiction in this over the Government and FedEx and UPS evidences the weakness in their positions. If plaintiffs truly had claims against the Government for refunds, then there would be no need to involve FedEx and UPS. The implicit concession in their position is that they have no claim against the Government because their claims arise from a private, contractual relationship in which they paid money to FedEx and UPS for express consignment operator services. That private, contractual dispute has no place in the Court of International Trade.

**CONCLUSION**

For these reasons, we respectfully request that the Court dismiss plaintiffs' complaints.

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Rebecca T. Mitchell
BLAKE W. COWMAN
REBECCA T. MITCHELL
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
(202) 353-2494
Blake.W.Cowman@usdoj.gov
Rebecca.Mitchell@usdoj.gov

November 17, 2026

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this Motion to Dismiss contains 7983 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Rebecca T. Mitchell